SAMUEL ROTHHOLZ

*v.*

SAMUEL SCHWARTZ.

The court of chancery will entertain jurisdiction of a suit, by vendor against vendee, for the specific performance of a contract for sale of chattels, where the payment was to be made by specific securities and the remedy at law is inadequate.

------

Heard on bill, answer and proofs.

*Mr. Stephany*, for the complainant.

*Mr. Baake* and *Mr. Crandall*, for the defendant.

PITNEY, V. C.

The bill is for the specific performance of a contract for the sale of chattels. It is by the vendor against the vendee. The subject-matter is a stock of dry goods and store fixtures in a store at Egg Harbor City, Atlantic county, together with the good-will of the business and the unexpired lease of the premises. The sale was so far consummated that the price was fixed and a portion of the purchase-money paid, and the defendant, the purchaser, put in possession. In arranging for the balance of

.the purchase-money, a dispute arose between the parties as to the precise nature of the security which the contract provided for.

The contract was made on the 28th of October, 1889 ; posses-.sion was delivered the next day. The bill was filed November .15th, and the answer November 25th. Upon filing the bill an ·order was made restraining the defendant from removing, encum-·bering or selling any of the goods except by way of retail, and that he show cause why a receiver should not be appointed. On · the day fixed for hearing that order, the parties agreed to bring the cause at once to final hearing, the complainant waiving his motion for a receiver and the defendant submitting to the con-tinuance of the restraining order.

The price agreed upon for the stock of goods and fixtures was $4,750, of which $2,000 was to be .paid in cash or its equivalent, and the balance in payments of about $400 each, at periods of from three to five months, until all was paid. The parties are agreed as to the details of these deferred payments. The dispute is as to the security which was to be given for their payment. ·Complainant asserts that for these deferred payments he was to . have a chattel mortgage upon the goods sold and also a bond ·with a warrant of attorney to confess judgment, payable one day after date, which securities he was to hold, without recording the one or entering up judgment on the other, unless it became necessary for him so to do in order to protect himself. And the prayer of the bill is, that the defendant be decreed to specifically perform his contract, by executing and delivering these securities.

The defendant denies that he agreed to give a bond and war-rant of attorney to confess judgment, and alleges that the chattel .mortgage was not to be recorded until thirty days after default should be made in the payment of one of the installments. By his answer, he states that prior to the filing of the bill he was ready and willing to complete the contract in accordance with his understanding of it, and, in fact, formally tendered such per-.formance before bill filed, which complainant declined to accept.

As a further defence, he sets up that after such tender, and .after bill filed, he discovered that the stock of goods was not

worth $4,750, or more than $3,500, and he insists that it will be inequitable and unjust to compel him to perform so hard a bargain, and offers to rescind, on such equitable terms as the court may impose, or to perform by giving a chattel mortgage for the unpaid balance found due upon a re-appraisement of the goods under direction of the court.

At the hearing, the defendant's counsel took the further ground, not set up in the answer, that the bill could not be maintained for two reasons—first, because the complainant had adequate relief at law; and, second, because the terms of the contract were not shown to have been agreed upon by either party; that the mind of the parties had not met, and hence the court could not enforce it.

The consideration of the questions so raised, compels a careful examination and consideration of the facts as shown in the testimony.

[Here follows a discussion of the facts, which is omitted as unnecessary to a proper understanding of the points decided.— REP.]

Upon a consideration of all the evidence and the manner of the witnesses in giving their testimony, I am entirely satisfied that the contract was made as alleged and sworn to by the complainant and Mr. Stephany, and that the defendant agreed to execute a bond and warrant of attorney and to deliver it with the chattel mortgage, without any written stipulation as to their use, trusting to the complainant's honor not to make use of it unless it became, in his judgment, necessary to do so in order to protect himself.

But if I were in doubt upon this question, there is another consideration which it seems to me ought to have weight in this connection. As soon as the defendant procured from Mr. Stephany the bond and warrant of attorney, he became aware that complainant expected that he would execute that as one of the securities for the deferred payments. He immediately took legal advice upon the subject. Mr. Baake states that he was consulted by defendant on or about the 1st of November, which was Friday. Defendant had interviews with complainant on Sunday,

November 3d, which made complainant's position entirely clear. It seems to me that the duty of the defendant was then very plain. If there was a misunderstanding as to the terms of the contract, the extent of that misunderstanding was then apparent to him and his counsel, and if he was unwilling to carry out the sale on complainant's terms, he should have promptly tendered a re-delivery of the possession, with an account of the goods sold in the meantime, and offered to rescind the contract and restore the complainant. Instead of that he demanded the final execution of the contract upon his own understanding of it, and retained the possession and continued to sell goods, and never, until after bill filed, offered to restore the possession. Of course, every day that he retained possession and sold goods, rendered it more difficult to restore the complainant to his former position, and it seems to me that the defendant is well-nigh estopped in equity from setting up that he did not understand the contract to be as complainant understood it. In other words, he has, so to speak, waived the defence that there was no meeting of minds, or, at least, that the terms of the contract are not proven with sufficient certainty, and has chosen to stand or fall by the weight of the evidence as to what the contract was. Besides, if defendant should succeed in satisfying the court that he did not consciously agree to give the judgment bond, and should not, therefore, be decreed to give it, he is still in the situation of not proving that the complainant agreed to part with his goods on credit with any less security, and the plain result is, that he has purchased and taken possession of the goods at a stipulated price without any agreement whatever as to credit, and so the purchase-money is, by implication, payable in cash, with the result that, since the complainant parted with the possession upon a misunderstanding as to the terms of the credit, he has now a clear right to come into this court and ask that his vendor's lien be restored and the goods sold to pay the balance due upon the purchase-money. So that, in any view that may be taken, the defence of want of agreement as to the terms of the credit, cannot, under the circumstances, avail the defendant.

Rothholz v. Schwartz.

With regard to the defence of fraud and concealment in the sale leading to a gross overestimate of the goods, and rendering the bargain a hard one, the facts are as follows :

[Here follows a discussion of the facts, which is omitted as unnecessary to a proper understanding of the points decided.— REP.]

Upon a careful examination of the whole case, I think this defence of fraud on the part of the complainant, and of hard bargain, is not at all sustained. On the contrary, I think the bargain was a fair one in all its parts.

\*    \*    \*    \*    \*    \*    \*    \*

The jurisdiction of this court, to decree specific performance of contracts for sale of chattels, is as well settled as it is for those of the sale of realty, and is based upon the same grounds, namely, the inability of the courts of law to give such remedy. And so the question, whether the court will, in a particular case, exercise its jurisdiction, is to be determined upon the same considerations in both cases, the most important being the question, whether there is a full, complete and adequate remedy at law. And the reason why the jurisdiction is seldom exercised over sales of chattels is, that the remedy at law, in such cases, is usually adequate and satisfactory. *Cutting* v. *Dana, 10 C. E. Gr. 265,* and cases there cited; *Pom. Spec. Perf.* §§ *9–20; Waterm. Spec. Perf.* §§ *16, 17.*

The cases cited by Chancellor Runyon in *Cutting* v. *Dana,* and Professor Pomeroy and Judge Waterman, are mostly, if not all, cases of vendee against vendor, and the language used in the text of the treatises is mainly applicable to such cases. But the principle upon which they go includes the cases of vendor against vendee. *Waterm. Spec. Perf.* § *15; Pom. Spec. Perf.* § *6.* In our state, *McKnight* v. *Robbins, 1 Halst. Ch. 229,* and, on appeal, *p. 642,* was a case of specific performance of a contract for sale of chattels by vendor against vendee, and has the support of the judgment of Chief-Justice Green. The object of that suit was the same as that of the one now in hand, viz., to recover the price of the chattels in specie.

31

The only question, then, is, had the complainant in this case such a complete and adequate remedy at law as that this court should decline to exercise its jurisdiction, and give him expressly what he bargained for? It is proper here to remark, that when the defendant intends to ask the court not to exercise its jurisdiction, for the reason that the remedy at law is sufficiently adequate, he should take the objection in his answer. Ordinarily, unless so taken, it will be deemed to have been waived. The objection to the exercise of the admitted jurisdiction of the court, on the ground that there is an adequate remedy at law, differs from an objection for want of jurisdiction, which may be taken at any time. Here, the jurisdiction is indisputable, the only question being, whether the court ought to exercise it.

But, looking at the case as if the objection had been taken in time, it is manifest that the usual remedy at law, viz., a suit to recover the balance of the unpaid purchase-money, or its equivalent—damages for not executing the securities stipulated for—would not be an adequate remedy, for the reason, that the defendant has no property outside of the goods sold, and, during the pendency of that suit, the complainant would be destitute of any control over or lien upon the stock of goods, and defendant might, before judgment, move them beyond the jurisdiction of the court.

It was suggested, rather than argued, by counsel, that complainant might bring replevin, and recover possession of the goods themselves. Conceding that, by voluntarily putting the defendant in possession, and trusting to his promise to execute the securities at a future hour, complainant did not lose the right to reclaim (which I think more than doubtful), still, it seems to me, that it is more than probable that a reclamation of possession by means of a replevin would be treated, at law, as a rescission of the contract, and must be preceded by a repayment or tender of return of the part payment and an abandonment of all benefit from the contract. Among the numerous cases on this subject, most of which are cited in Corbin's edition of *Benjamin on Sales*, I have not found any in which, after a part payment and delivery of possession, the vendor was held entitled to reclaim

possession, except on the basis of rescission, and except, of course, those cases where, by the express terms of the sale, title was to remain in the vendor, as in *Cole* v. *Berry*, *13 Vr. 308.* The ground of reclamation in such cases is, either that the sale was conditional upon complete payment, or that the goods were obtained by fraud.

Here, the vendor put the defendant in possession in the morning, and relied upon his promise to execute the securities in the evening, thus placing himself in the position of being liable to have it alleged against him that he had waived his vendor's lien, by putting defendant in possession before payment, and thus bringing himself within the language of Depue, J., in *Cole* v. *Berry*, *13 Vr. 310 :* " Payment of the contract price is one of the most usual conditions on which the transfer of title depends. It is generally a condition to be performed simultaneously with delivery. If such be the contract, a waiver of the condition may be presumed from an unconditional delivery, without exacting payment, and, in the absence of explanatory proof, the property will vest in the purchaser." See *Benj. Sales* (*Corbin's ed.*) §§ *335, 346, 352, 1125, 1126; Neil* v. *Cheves, 1 Bailey* (*S. C.*) *537.*

Further, with regard to the supposed remedy by way of regaining possession of the goods, it is to be remarked that, conceding that complainant could have accomplished that at law, without a rescission of the contract, and could have retained the part payment, and held the goods as security for the balance, it is plain that the only mode of completing that remedy would have been by selling the goods, in default of the execution by defendant of the required security to pay the balance due; and it is equally plain that by so doing complainant would have taken the law into his own hands and done just what he has asked this court to do.

Now, it seems to me, that it does not lie in defendant's mouth to complain that complainant has brought him into this court to administer this right under its direction and protection.

There should be a decree that defendant specifically perform, by executing and delivering the specified securities.